IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOAQUIN HERRERA, MARKO OSTOJIC, DOUGLAS ANDERSON, and JIM SHREWSBURY, individually, <br><br> Plaintiffs, <br><br> v. <br><br> CORN PRODUCTS INTERNATIONAL, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 05 C 2414 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 21, 2005, Plaintiffs Joaquin Herrera, Marko Ostojic, Douglas Anderson, and Jim Shrewsbury filed a three-count First Amended Complaint alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 200 *et. seq.*, the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/1 *et. seq.*, and a state common law claim of retaliatory discharge against Defendant Corn Products International, Inc. ("Corn Products"). Before the Court is Corn Products' Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Corn Products' motion.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint and is not designed to resolve the merits of case. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); *Berg v. B.C.S. Fin. Corp.*, 372 F.Supp.2d 1080, 1088 (N.D. Ill. 2005). The Court will grant a motion to dismiss only "if it appears beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)).  When ruling on a motion to dismiss, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view the allegations in the light most favorable to the plaintiff.  *Centers*, 398 F.3d at 933.

## BACKGROUND

I.   **Plaintiffs' Allegations**

    A.   **Parties**

In June 1992, Defendant Corn Products hired Plaintiff Joaquin Herrera as a Senior Operations Manager.  (R. 1-1; Am. Compl. ¶ 4.)  In June 1982, Corn Products hired Plaintiff Marko Ostojic as an Operations Manager.  (*Id.* ¶ 5.)  Corn Products hired Plaintiff Douglas Anderson in January of 1991 as an Operations Manager.  (*Id.* ¶ 6.)  In addition, Corn Products hired Plaintiff Jim Shrewsbury as an Operations Manager in May of 2002.  (*Id.* ¶ 7.)

Corn Products is an Illinois corporation authorized to do business in the State of Illinois. (*Id.* ¶ 8.)  Corn Products produces corn-refined and starch-based ingredients.  (*Id.*)  Its corporate headquarters are located in Westchester, Illinois, and it has a facility in Bedford Park, Illinois ("Archer Facility").  (*Id.*)

    B.   **Corn Products' Relationship with Total Facility Maintenance**

Corn Products subcontracted the janitorial work for its Archer Facility to Total Facility Maintenance, Inc. ("TFM").  (*Id.* ¶ 10.)  Plaintiffs allege that TFM was an agent of Corn Products, because Corn Products "derived benefit from its relationship" with TFM, and Corn Products "substantially controlled the manner in which TFM employees performed their work."

2

(*Id.*) Through this agency relationship, Plaintiffs allege that Corn Products agreed to pay the janitorial employees at its Archer Facility. (*Id.* ¶ 11.)

### B. Janitorial Employees

The janitorial employees complained on several occasions to Plaintiffs, as Operations Managers at Corn Products, that TFM was not paying them their proper wages. (*Id.* ¶ 13.) Specifically, the janitorial employees complained that TFM was not paying them time and one-half for the hours they worked in excess of the normal forty hour work week. (*Id.* ¶ 12). Initially, Herrera advised the employees to speak directly to their manager about their wage problems. (*Id.* ¶ 13). In addition, TFM's owner told the employees to stop complaining to Plaintiffs about their wages or they would be fired. (*Id.* ¶ 17.)

Plaintiffs voiced concerns to Corn Products' management about the janitorial employees' wages on several occasions. (*Id.* ¶ 15.) Specifically, Plaintiffs told Corn Products' management that "a violation of law was occurring by not paying the janitorial employees the agreed upon wages." (*Id.*) Ostojic sent an e-mail to Accounting Manager Judy Cox in April 2003 concerning the janitorial employees, as well. (*Id.*) Plaintiffs also complained to Purchasing Manager John Fitzsimmons that Corn Products, through TFM, failed to properly pay the janitorial employees. (*Id.*) Plaintiffs further allege that Corn Products instructed them to dismiss any complaints from the janitorial employees about their wages. (*Id.* ¶ 16.)

### C. Timesheets

In response to continued complaints from the janitorial employees, Plaintiffs increased the hours on the employees' timesheets. (*Id.* ¶ 18.) Plaintiffs believed this would "correct the unlawful acts of Corn Products through its agent TFM." (*Id.* ¶ 19.) Plaintiffs allege that increasing hours on employee timesheets was common practice at Corn Products, and

management recognized the practice as a legitimate method of ensuring that Corn Products pays its employees properly. (*Id.* ¶ 20.)

### D. Plaintiffs' Termination

On or about January 21, 2005, Corn Products terminated Plaintiffs for allegedly violating Corn Products' company policies. (*Id.* ¶ 21.) Plaintiffs claim that Corn Products terminated them because of their complaints about Corn Products' failure to properly pay wages pursuant to the FLSA and their efforts to comply with the FLSA's wage payment and overtime requirements. (*Id.* ¶ 26.)

## **ANALYSIS**

Corn Products argues that the Court should dismiss Plaintiffs' FLSA claim because Plaintiffs committed fraud by adjusting the janitorial employees timesheets, and the FLSA does not protect such unlawful activity. Moreover, Corn Products maintains that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims once it dismisses Plaintiffs' FLSA claim. Plaintiffs, on the other hand, contend that they have adequately alleged a claim for a FLSA retaliation claim under Federal Rule of Civil Procedure 8(a).

Under the liberal federal notice pleading standard embodied in Federal Rule of Civil Procedure 8(a), a plaintiff need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief," which requires the plaintiff to plead "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Fed. R. Civ. P. 8(a)(2); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Notice pleading does not require an exhaustive recitation of facts or elements of the claims. *Lekas v. Briley,* 405 F.3d 602, 606 (7th Cir. 2005).

4

With the liberal notice pleading standard in mind, the Court turns to Corn Products' Motion to Dismiss Plaintiffs' FLSA claim. A retaliation charge under the FLSA prohibits any person from discharging or discriminating against any employee "because such employee has filed *any complaint* or instituted . . . any proceeding under or related to this chapter." Section 215(a)(3) (emphasis added); *see also Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999). The elements of a FLSA retaliation claim are: (1) plaintiff engaged in statutorily protected expression; (2) plaintiff suffered an adverse employment action; and (3) a causal link between the protected expression and the adverse employment action exists. *Scott v. Sunrise Healthcare Corp.,* 195 F.3d 938, 940 (7th Cir. 1999).

Here, Plaintiffs allege that they voiced concerns to Corn Products' management on several occasions, including that "a violation of law was occurring by not paying the janitorial employees the agreed upon wages." (R. 1-1, Am. Compl. ¶ 15.) They further allege that Ostojic sent an e-mail to Corn Products' Accounting Manager and they complained to Purchasing Manager John Fitzsimmons that Corn Products, through TFM, failed to properly pay the janitorial employees. (*Id.*) Thus, Plaintiffs are basing their FLSA retaliation claim on their informal complaints to Corn Products' management.

Although the Seventh Circuit has yet to address whether an informal complaint satisfies the "any complaint" requirement under Section 215(a)(3), other circuit court decisions lend guidance. For instance, the Ninth Circuit held that the FLSA protects employees who file informal complaints, as well as employees who file formal proceedings with the Department of Labor or with a court. *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999). In *Lambert*, the Ninth Circuit explained that based on the FLSA's remedial nature, the statute must be interpreted broadly to protect individual's rights. *Id.* Other circuit courts have also held that Section

5

215(a)(3) protects the kind of informal conduct Plaintiffs allege in the case at bar. *See, e.g., Valerio v. Putnam Assocs, Inc.*, 173 F.3d 35, 43 (1st Cir. 1999) (filing complaint with employer is protected activity under the anti-retaliation provision of FLSA); *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989-90 (6th Cir. 1992) (employee's assertion that employer was "breaking some sort of law" fell within Section 215(a)(3) protections); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975) (protesting what employee believed to be unlawful conduct is a protected activity under Section 215(a)(3)); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (FLSA applies to unofficial assertion of rights through complaints); *EEOC v. White & Sons Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (unofficial employee complaints regarding unequal pay qualify as protected assertion of rights under FLSA).

In addition, courts in this district have also concluded that informal complaints constitute "any complaint" within the meaning of Section 215(a)(3) based on the FLSA's broad remedial purpose. *See, e.g., Skelton v. American Intercontinental Univ. Online*, ___ F.Supp.2d ___, No. 03 C 9009, 2005 WL 2001281, *6 (N.D. Ill. Aug. 19, 2005) (employee's internal verbal complaints to head of human resources constituted protected activity); *Wittenberg v. Wheels, Inc.*, 963 F. Supp. 654, 658-59 (N.D. Ill. 1997) (anti-retaliation provision of FLSA encompasses informal complaints).

These decisions are persuasive because they follow well-established Supreme Court precedent that the FLSA "must not be interpreted in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 550, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944); *see also Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292-93, 80 S. Ct. 332, 4 L. Ed. 2d 323 (1960) (expansive reading of FLSA motivates employees to report wage and hour violations). In *Mitchell*, the Supreme Court reasoned that when enacting the FLSA,

"Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced." *Id.* at 292. Therefore, Plaintiffs have sufficiently alleged a retaliation claim under the FLSA based on their informal verbal complaints to Corn Products' management.

Nonetheless, Corn Products contends that Plaintiffs have plead themselves out of court because they allege that they changed the janitors timesheets, and thus they have committed fraud. At this procedural posture, however, the Court must view the facts and all reasonable inferences in a light most favorable to Plaintiffs. *See Centers*, 398 F.3d at 933. As such, the Court cannot make the factual determination that Plaintiffs committed fraud as Corn Products suggests.[1]

Next, Corn Products argues that Plaintiffs failed to plead a causal link between the alleged protected activity and the adverse employment action of Corn Products terminating their employment. Under the liberal notice pleading framework, Plaintiffs need only allege the minimum facts necessary to put Corn Products on notice of their claims, which they have done so here. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) ("there is no requirement in federal suits of pleading the facts or the elements of a claim"); *see also Higgs,* 286 F.3d at 439.

Because the Court denies Corn Products' Motion to Dismiss Plaintiffs' FLSA claim, the Court need not address Corn Products' argument that the Court should relinquish supplemental jurisdiction and remand Plaintiffs' state law claims.

---

[1] In a footnote in its legal memorandum to the Court, Corn Products also contends that Plaintiffs' FLSA claim must fail because TFM was not Corn Products' agent, but instead was an independent contractor. Viewing the facts and inferences in a light most favorable to Plaintiffs, they have alleged that TFM was Corn Products' agent. *See Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). As such, Corn Products' argument fails.

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motion to dismiss.

Dated:  September 21, 2005

                        **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**